

CHANCERY CLERK COPIAH COUNTY, MS
I certify this instrument file /recorded
05/11/2023 3:21:16 PM
Book: DOT 855 Pg:572-593
Inst. 115645 Page 1 of 22
Witness my hand and seal
STEVE AMOS

## DEED OF TRUST RECORDING COVER PAGE

**PREPARED BY AND RETURN TO:**
21st Mortgage Corporation, NMLS 2280
620 Market St., Knoxville, TN 37902
800 955 0021
**Robert Rutta, NMLS# 1915241**

**Trustee**
Tim Williams
620 Market St., Ste 100, Knoxville, TN 37902
1-800-955-0021

**INDEXING INSTRUCTIONS**

**GRANTORS:**   Tamara Dionne Beacham
11184 Old Port Gibson Rd, Hazlehurst, MS 39083

**GRANTEE:**   21st Mortgage Corporation
One Centre Square, 620 Market St., Knoxville, TN 37902
800-955-0021

**DOCUMENT ATTACHED HERETO FOR RECORDING**





EXHIBIT
tabbies

MSR23-460727
11184 Old Port Gibson Road
Hazlehurst, MS 39083
Tamara Dionne Beacham

## EXHIBIT A

Legal Description

The following described land and property being situated in Copiah County, Mississippi, to wit:

A certain parcel of land containing 2 acres, more or less, situated in the NW1/4 of NE 1/4 of Section 5, Township 10 North, Range 7 East, more particularly described as:

Beginning at a point 110 yards south of the Northeast corner of the NW 1/4 of NE 1/4 of Section 5, Township 10 North, Range 7 East; thence running West 70 yards; thence South 140 yards; thence East 70 yards; thence North 140 yards to the point of beginning, in Copiah County, Mississippi.

1-111 -05-006.00

Title to the above described property conveyed to Tamara Dionne Beacham from Michael Thomas by Warranty Deed dated July 19, 2011 and recorded August 12, 2011 in Book 18-E, Page 466 or Instrument No. 78118.



After Recording Return To:
21st Mortgage Corp.
Preparer: Heather Duncan
620 Market St., Ste 100
Knoxville, Tennessee 37902
(800) 955-0021
<u>This Loan Originated By:</u>
Robert Rutta, NMLS# 1915241, of
21st Mortgage Corporation, NMLS 2280
This Instrument Prepared By:
21st Mortgage Corporation
Land Home Dept.
620 Market Street, Suite 100
Knoxville, Tennessee 37902

Satisfaction: The debt secured by the within Deed of Trust together with the Note secured thereby has been satisfied in full. This _____ day of _____, 20____.

_____
_____

_____ **[Space Above This Line For Recording Data]** _____

# DEED OF TRUST

## DEFINITIONS

Words used in this document are defined below and other words are defined in various Sections of this document.

**(A) "Security Instrument"** means this document. which is dated ____5/3/2023____, together with all Riders to this document.

**(B) "Security Agreement"** means those provisions of the Note (hereinafter defined) and of this Security Instrument incorporated into the Note whereby Borrower has granted Lender a security interest under the Applicable Uniform Commercial Code in the Manufactured Home (hereinafter defined) and agreed to certain terms and conditions relating thereto.

**(C) "Borrower"** is/are

Tamara Dionne Beacham, a single individual

who is/are obligated under the Note (defined below). Borrower is the trustor under this Security Instrument.

**(D) "Lender"** is **21st Mortgage Corporation**, a corporation organized and existing under the laws of Delaware. with an address of 620 MARKET STREET, SUITE 100, KNOXVILLE. TN 37902. Lender is the beneficiary under this Security Instrument. The term "Lender" also

MISSISSIPPI–DOT–AI/BC

Form 3025 *(page 1 of 20 pages)*



includes anyone who takes the Note and Security Instrument by transfer and who is entitled to receive payments under the Note ("Note Holder").

**(E) "Trustee"** is **Tim Williams**. Trustee's address is 620 Market Street, Suite 100, Knoxville, TN 37902.

**(F) "Note"** means the consumer loan note signed by Borrower and dated ___5/3/2023___. The Note states that Borrower owes Lender

One Hundred Sixty-Seven Thousand Four Hundred Twenty and 65/100 Dollars

Dollars (U.S. ___$167,420.65___) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than ___5/15/2048___.

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Manufactured Home"** means and refers to the below described manufactured home, and all accessions, attachments, accessories, replacements and additions thereto, whether added now or later (but not including any "household goods" as defined in the FTC Credit Practices Rule, 16 C.F.R. 444, if the Loan proceeds do not provide for the purchase of such items) and all proceeds and products thereof:

### DESCRIPTION OF MANUFACTURED HOME:
New ☒      Used ☐

| YEAR: | 2023 |
|---|---|
| TRADE NAME: | TIMBERCREEK |
| MODEL: | BLACKWATER |
| SERIAL NO: | TCHAL0100642A23 |
| SERIAL NO: | TCHAL0100642B23 |
| SERIAL NO: | |
| SERIAL NO: | |
| SERIAL NO: | |
| SERIAL NO: | |

### ADDITIONAL ACCESSORIES AND FURNISHINGS:
### ITEM AND SERIAL NUMBER

| | |
|---|---|
| | |
| | |
| | |
| | |
| | |

**(I) "Loan"** means the debt evidenced by the Note, plus interest and late charges due under the



Note, and all sums due under this Security Instrument and Security Agreement, plus interest.

**(J) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider   ☐ Second Home Rider
☐ Balloon Rider   ☐ Planned Unit Development Rider   ☒ Other(s) Exhibit A
☐ 1-4 Family Rider   ☐ Biweekly Payment Rider

**(K) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(L) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(M) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(N) "Escrow Items"** means those items that are described in Section 3.

**(O) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.



## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Security Agreement. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described real property located in the County of ____Copiah____ (the "Property"):
which currently has the address of _____ 11184 Old Port Gibson Rd _____

[Street]

_____Hazlehurst_____, Mississippi _____39083_____ ("Property Address"):

[City]                              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the Property, and all easements, appurtenances, and fixtures now or hereafter a part of the Property. All replacements and additions shall also be covered by this Security Instrument, provided however, that the Manufactured Home, while it is or will be located on the Property, is not and shall not be deemed to be an improvement to the Property, but is and shall remain personal property unless surrender of title to the Manufactured Home and/or affixation of the Manufactured Home to the Property is approved by Lender in writing as described in Section 3 of the Note. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

The Manufactured Home is subject to a security interest granted by the Borrower to the Lender under the Note. The Note, and terms and provisions herein relating to the Manufactured Home which have been incorporated into the Note, constitute the Security Agreement relating to the Manufactured Home.

### *BORROWER AND LENDER COVENANTS AND AGREEMENTS*

Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3.

Payments due under the Note and this Security Instrument and Security Agreement shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument and the Security Agreement is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument and the Security Agreement be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 13. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender, at its election, may hold such unapplied funds until Borrower makes payment to bring the Loan current or until such funds are sufficient to make a full installment payment of principal and interest. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure and effecting remedies under this Security Instrument and/or Security Agreement. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or the Security Agreement or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any

excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** As Lender shall require, or if Lender does not require, but Borrower so chooses, Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum to provide for payment of amounts due for premiums for any and all insurance required by Lender under Section 5 on the Property and payment of amounts for taxes, assessments, charges, fines and impositions attributable to the Property which can attain priority over this Security Instrument (called "Escrow Items" if required by Lender under the following provisions). All funds paid into escrow are "Funds" or "Escrow Funds." At any time during the term of the Loan, Lender may also require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. An oral waiver by Lender constitutes a valid waiver under this Section 3. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 8. If Lender does not maintain an account for Borrower's Escrow Items, Borrower shall be obligated to make such payments for Escrow Items, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 8 and pay such amount and Borrower shall then be obligated under Section 8 to repay to Lender any such amount. Lender may require an account as to any or all Escrow Items at any time by a notice given in accordance with Section 13 and, upon such notice, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 13 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender



to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions, and Community Association Dues, Fees and Assessments, attributable to the Property or Manufactured Home which can attain priority over this Security Instrument or the Security Agreement. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument or Security Agreement unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender



subordinating the lien to this Security Instrument or Security Agreement. If Lender determines that any part of the Property or Manufactured Home is subject to a lien which can attain priority over this Security Instrument or the Security Agreement, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

If Borrower fails to satisfy the lien or take one or more of the actions set forth above in this Section 4, Lender may pay any such taxes, assessments, charges, fines and impositions, or Community Association Dues, Fees and Assessments, at Lender's option and at Borrower's expense. Any amounts paid by Lender under this Section 4 shall become additional debt of the Borrower secured by this Security Instrument. These amounts may bear interest at the rate provided for in the Note, unless prohibited by Applicable Law, and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the Manufactured Home, as well as the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance (and specifically including flood insurance, if applicable), during the term of the Note and at Borrower's expense ("Property Insurance"). This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance policy must contain a standard mortgage clause and name Lender as mortgagee and/or additional loss payee (as Lender's interest may appear), and provide for at least ten (10) days prior notice of cancellation to Lender. Borrower agrees to provide written proof of coverage within five (5) days of Lender's request.

**BORROWER HAS THE RIGHT TO CHOOSE THE PERSON THROUGH WHOM THE PROPERTY INSURANCE IS TO BE OBTAINED AND THE INSURANCE CARRIER.**

The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification, unless prohibited by Applicable Law. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower, unless prohibited by

Applicable Law.

### Lender's Right to Obtain Property Insurance

If Borrower fails to maintain any of the coverages described above or fails to provide Lender with satisfactory proof of coverage, or should such insurance, for any reason, not be in place to protect Lender 's interests, Lender, in its sole discretion, may obtain Property Insurance, but is under no legal obligation to do so.

Before obtaining insurance in these circumstances, Lender will in good faith attempt to inform Borrower in writing of the need for Borrower to obtain Property Insurance and/or to provide evidence thereof. If obtained by Lender, the cost of such will be added to the amount due under the Loan, and will be due and payable by Borrower upon demand by Lender or in payments added to the Borrower 's regularly scheduled Period Payments or as is otherwise required by Lender. Lender may charge Borrower interest on such cost at the interest rate provided for in the Note, unless prohibited by Applicable Law.

The Property Insurance obtained by Lender may be materially different from the insurance, if any, initially financed under this Loan or insurance Borrower may have obtained initially or have obtained at any time during the term of the Loan, and may be significantly more expensive to Borrower than if Borrower had obtained such insurance. Consequently, Lender makes the following disclosures to Borrower:

  (a) The Property Insurance Lender obtains is intended solely to protect Lender's interest hereunder, and Lender may not obtain coverages beyond those which insure loss or damage to the Manufactured Home; in particular, such insurance may not provide coverage for personal effects, adjacent structures, medical expenses or personal liability; additionally, such coverage may not insure the Manufactured Home in an amount equal to the unpaid balance due under this Loan and, consequently, in the event of loss or damage the insurance may not pay the full amount of the unpaid balance of the Loan;

  (b) The cost of this insurance may be higher than if Borrower satisfied its obligation hereunder and acquired such insurance; Lender is being required to obtain such insurance due to Borrower's default and, consequently, Borrower acknowledges and agrees that Lender has no duty to obtain insurance which the Borrower could obtain, which is the least expensive, or which has a competitive marketplace premium or other particular quality;

  (c) Lender or its affiliates may be reimbursed for expenses and/or profit from taking action to cure Borrower's default to provide and maintain such insurance;

  (d) Borrower's execution of this Security Instrument authorizes Lender to provide to third parties any information necessary to obtain and monitor such insurance; and

**Borrower may, as stated above, at any time, including after Lender has obtained Property Insurance, obtain such insurance through the agent or insurance carrier of Borrower's choice; if Borrower obtains and provides Lender with sufficient evidence of insurance coverage, the insurance coverage obtained by Lender will be cancelled and Lender will obtain the refund of the premium, if any, due to the cancellation of such insurance obtained by Lender and apply such refund to the unpaid balance of the Note.**

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Manufactured Home, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect the Manufactured Home to ensure the work has been completed to Lender's satisfaction. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, as determined in Lender's sole discretion, reasonably exercised, the insurance proceeds shall be applied to the sums secured by this Security Instrument and the Security Agreement, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. In any event, if Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 20 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note, this Security Instrument or the Security Agreement, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Manufactured Home and the improvements. Lender may use the insurance proceeds either to repair or restore the Manufactured Home and improvements or to pay amounts unpaid under the Note, this Security Instrument or the Security Agreement, whether or not then due.

**6. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Manufactured Home or improvements, allow such to deteriorate or commit waste on thereon. Whether or not Borrower is residing in the Manufactured Home, Borrower shall maintain the Manufactured Home in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Manufactured Home and improvements if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Manufactured Home or the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Manufactured Home or Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Manufactured Home or Property, including an inspection of the interior of the Manufactured Home, in which case Lender shall give Borrower notice prior to such inspection.

**7. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**8. Protection of Lender's Interest in the Property and Manufactured Home and Rights Under this Security Instrument or the Security Agreement.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument or the Security Agreement, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property, the Manufactured Home and/or rights under this Security Instrument or the Security Agreement (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or the Security Agreement or to enforce laws or regulations), or (c) Borrower has abandoned the Property or the Manufactured Home, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest therein and rights under this Security Instrument and the Security Agreement, including protecting and/or assessing the value of the Property or the Manufactured Home, and securing and/or repairing the Property or the Manufactured Home. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument or the Security Agreement; (b) appearing in court;

and (c) paying reasonable attorneys' fees to protect its interest in the Property or Manufactured Home and/or rights under this Security Instrument or the Security Agreement, including its secured position in a bankruptcy proceeding. Securing the Property or Manufactured Home includes, but is not limited to, entering the Property or Manufactured Home to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 8, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 8.

Any amounts disbursed by Lender under this Section 8 shall become additional debt of Borrower secured by this Security Instrument and the Security Agreement. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment, unless regulated by Applicable Law otherwise.

**9. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Manufactured Home and improvements are damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Manufactured Home and improvements, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds in the same manner as set forth in Section 5 above relating to proceeds of property insurance.

In the event of a total or partial taking, total or partial destruction, or total or partial loss in value of the Property or Manufactured Home, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument or the Security Agreement, whether or not then due, with the excess, if any, paid to Borrower.

If the Property or Manufactured Home is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or Manufactured Home or to the sums secured by this Security Instrument or the Security Agreement, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or Manufactured Home or other material impairment of Lender's interest in the Property or Manufactured Home or rights under this Security Instrument or the Security Agreement. The proceeds of any award or claim

for damages that are attributable to the impairment of Lender's interest in the Property or Manufactured Home are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property or Manufactured Home shall be applied in the order provided for in Section 2.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument or the Security Agreement granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument or the Security Agreement by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**11. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note and Security Agreement (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument or the Security Agreement; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument, the Security Agreement or the Note without the co-signer's consent.

Subject to the provisions of Section 16, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument and the Security Agreement in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument and Security Agreement. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument or Security Agreement unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument and Security Agreement shall bind (except as provided in Section 18) and benefit the successors and assigns of Lender.

**12. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and Manufactured Home and rights under this Security Instrument and the Security Agreement,



including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument or the Security Agreement to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument, the Security Agreement or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**13. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument or the Security Agreement must be in writing. Any notice to Borrower in connection with this Security Instrument or the Security Agreement shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument and the Security Agreement at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument or the Security Agreement shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument or the Security Agreement is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument and the Security Agreement.

**14. Governing Law; Severability; Rules of Construction.** This Security Instrument and the Security Agreement shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument and the

Security Agreement are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument, the Note or the Security Agreement conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument, the Note or the Security Agreement which can be given effect without the conflicting provision.

As used in this Security Instrument or the Security Agreement: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**15. Borrower 's Copy.** Borrower shall be given one copy of the Note and Security Agreement and of this Security Instrument.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 16, "Interest in the Property" means any legal or beneficial interest in the Property and Manufactured Home, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or Manufactured Home or any Interest in the Property or Manufactured Home is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument and the Security Agreement. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 13 within which Borrower must pay all sums secured by this Security Instrument and the Security Agreement. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument and the Security Agreement without further notice or demand on Borrower.

**17. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument and the Note (including the Security Agreement) discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument and the Note



(including the Security Agreement). Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note (including the Security Agreement) as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and Manufactured Home and rights under the Note (including the Security Agreement) and this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument and Security Agreement, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and the Note (including the Security Agreement) and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 16, unless otherwise prohibited by Applicable Law.

**18. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument and Security Agreement) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and Security Agreement and this Security Instrument and performs other mortgage loan servicing obligations under the Note and Security Agreement, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower, Lender, successor holder of this Security Instrument or the Note (including the Security Agreement), nor Loan Servicer, may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to the Note (including the Security Agreement) or this Security

Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, the Note (including the Security Agreement) or this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 13) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The Notice of Default (defined in Section 9(d) of the Note) and the notice of acceleration and opportunity to cure given to Borrower pursuant to Section 20 and the notice of acceleration given to Borrower pursuant to Section 16 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 18.

**19. Hazardous Substances.** As used in this Section 19: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property or Manufactured Home. Borrower shall not do, nor allow anyone else to do, anything affecting the Property or Manufactured Home (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property or Manufactured Home. The preceding two sentences shall not apply to the presence, use, or storage on the Property or Manufactured Home of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property or Manufactured Home (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property or Manufactured Home and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely

affects the value of the Property or Manufactured Home. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property or Manufactured Home is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**20. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument or the Note (including the Security Agreement but not prior to acceleration under Section 16 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and the Security Agreement and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument and the Security Agreement without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give Borrower, in the manner provided in Section 13, notice of Lender 's election to sell the Property. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at such time and place in ___Copiah___ County as Trustee designates in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

MISSISSIPPI--DOT--AI/BC                                    Form 3025 *(page 18 of 20 pages)*

**21. Release.** Upon payment of all sums secured by this Security Instrument and the Security Agreement, Lender shall cancel this Security Instrument. If Trustee is requested to cancel this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**22. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____ (Seal)
Tamara Dionne Beacham     - Borrower

_____ **[Space Below This Line For Acknowledgment]** _____

STATE OF MISSISSIPPI
COUNTY OF _Forrest_____

Personally appeared before me, the undersigned authority in and for said county and state, on this ____3____ day of __May_____, __2023__, within my jurisdiction, the within named ____Tamara Dionne Beacham, a single individual____, who acknowledged that (he/she/they) executed the above and foregoing instrument.

_Sheri A Young_____
Notary Public

My commission     My Commission Expires
expires:     December 1, 2023
_____

*(Notary Seal: SHERI A YOUNG, Commission Expires 12-01-2023, NOTARY PUBLIC, ID 168565, Lamar County, STATE OF MISSISSIPPI)*

MISSISSIPPI–DOT–AI/BC                   Form 3025 *(page 20 of 20 pages)*

